**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

DEBRA TERESA WILSON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 2:14-cv-159

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Donald Fishman ("the ALJ" or "ALJ Fishman") denying her claim for supplemental security income benefits. Plaintiff urges the Court to reverse the ALJ's decision and award her benefits or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

### BACKGROUND

Plaintiff protectively filed an application for supplemental security income benefits on June 20, 2011, alleging that she became disabled on August 18, 2010, due to depression, bipolar disorder, and cervical tumors. (Doc. 12-3, p. 16.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 13, 2012, ALJ Fishman conducted a video hearing at which Plaintiff, who was represented by a non-attorney representative, appeared and testified in Brunswick, Georgia, while the ALJ was in Savannah, Georgia. Kim Bennett, a vocational expert, also appeared at the hearing. ALJ Fishman found

that Plaintiff was not disabled within the meaning of the Act. (Doc. 12-2, p. 11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 1.)

Plaintiff, born on June 5, 1962, was fifty (50) years old when ALJ Fishman issued his final decision. She has an eleventh grade education.[1] (Id. at p. 30.) Plaintiff's past relevant work experience includes employment as a customer service clerk. (Id. at p. 65.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.

---

[1] The Court notes ALJ Fishman stated in his opinion that Plaintiff has a high school education. (Doc. 12-2, p. 17.) However, Plaintiff testified during the administrative hearing that she finished eleventh grade and did not complete her General Equivalency Diploma ("GED") requirements. (Doc. 12-2, p. 30.) The ALJ did include an eleventh grade education level in his hypothetical to the vocational expert. (Id. at p. 65.)

Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 20, 2011, through the date of ALJ Fishman's decision on February 1, 2013. (Doc. 12-2, p. 13.) At Step Two, the ALJ determined that Plaintiff had affective disorder and asthma, conditions considered "severe" under the Regulations.[2] However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at pp. 12–13.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform work at the full range of the light work level, except with the following limitations: lifting twenty pounds occasionally and ten pounds frequently; sitting, walking, and standing individually for up to eight hours; avoiding climbing

---

[2] The ALJ noted Plaintiff's history of fibroid uterus and pelvic adhesions but noted Plaintiff underwent a total hysterectomy and had no residual limitations as a result. (Doc. 12-2, p. 12.)

ladders, ropes, and scaffolding; avoiding concentrated fumes, dust, and temperature extremes; climbing stairs and crawling occasionally; stooping, crouching, and kneeling frequently; avoiding frequent public interaction; and performing repetitive short cycle work with a Specific Vocational Preparation code between 1 and 3. (Id. at p. 15.) At the next step, ALJ Fishman noted Plaintiff was unable to perform her past relevant work as a customer service representative. (Id. at p. 17.) The ALJ determined at the final step that Plaintiff had the residual functional capacity for and could adjust to work as a bench assembler, cleaner/housekeeper, and office helper. (Id. at p. 18.)

## II. Issues Presented

Plaintiff contends the ALJ erred by failing to consider and adequately weigh medical opinion evidence. Plaintiff also contends the ALJ erred in failing to find she met Listing 12.04. Further, Plaintiff asserts the ALJ erred in relying on a hypothetical question posed to the vocational expert which did not fully encompass her limitations.

## III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

### III. Medical Opinions

Plaintiff avers the ALJ gave little weight to the opinion of her treating physician, Dr. William Shivers, and ALJ Fishman's decision to do so is not supported by substantial evidence. Plaintiff contends that there is nothing of record suggesting Dr. Shivers' opinion was not based on clinical or objective evidence. Plaintiff also contends the ALJ failed to note how long Dr. Shivers provided Plaintiff with treatment, the number of examinations, his specialty in psychiatry, or the fact that his opinion is consistent with the opinions of the two other doctors who examined her, Dr. Marc Eaton and Dr. Aroon Suansilppongse. (Doc. 14, p. 14.) In addition, Plaintiff alleges the ALJ's failure to properly credit Drs. Eaton's and Suansilppongse's opinion is clear error. (Id. at pp. 14–16.) Further, Plaintiff maintains ALJ Fishman failed to even discuss the opinions of Dr. Jennifer Keyes and Dr. Joseph Garmon, both of whom evaluated Plaintiff.

The Commissioner asserts substantial evidence supports the weight the ALJ gave the medical source opinions. Specifically, the Commissioner asserts Dr. Shivers failed to include any medical or clinical findings to support his "extreme" assessment, despite being asked to

5

describe his clinical findings. (Doc. 18, p. 8.) The Commissioner also asserts ALJ Fishman noted that Plaintiff saw Dr. Shivers on an infrequent basis prior to November 1, 2012, at which time he completed a medical source statement. The Commissioner contends Dr. Shivers indicated his initial diagnosis was based on Plaintiff's mental health status without benefit of a comprehensive examination and Plaintiff's self-reported history. (Id. at p. 10.) The Commissioner states the ALJ reasonably discounted Dr. Shivers' opinions and gave good reasons for doing so. The Commissioner also contends substantial evidence supports the ALJ's decision to give little weight to Dr. Eaton's opinion, as Dr. Eaton relied too heavily on Plaintiff's subjective complaints, and his opinions were inconsistent with the record as a whole. Further, the Commissioner asserts that the ALJ implicitly gave the opinions of Drs. Suansilppongse, Keyes, and Garmon little weight because their opinions relied too heavily on Dr. Shivers' and Dr. Eaton's opinions. (Id. at p. 14.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

6

conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

ALJ Fishman found that Dr. Shivers' opinions contained in the mental medical source statement were not based on clinical or objective evidence "but largely on [Plaintiff's] own complaints and account of her symptoms and limitations[.]" (Doc. 12-2, p. 17.) ALJ Fishman noted there was a lack of supporting evidence and that the format of Dr. Shivers' statement was "heavily weighted" by Plaintiff's subjective complaints. (Id.) Thus, he gave Dr. Shivers' opinion "relatively little weight." (Id.) In addition, the ALJ observed Dr. Shivers had seen Plaintiff on a very infrequent basis before he completed his assessment in November 2012. The ALJ also observed Dr. Shivers did not record any abnormal findings or perform a mental status evaluation prior to completing this assessment. Moreover, the ALJ noted Plaintiff's Global Assessment of Functioning ("GAF") scores—55 prior to the completion of the assessment and 60 at the highest—indicate only moderate and nearly mild limitations and were inconsistent with Dr. Shivers' "extreme findings." (Id.)

As for Dr. Eaton's conclusions, the ALJ discounted them because they also relied too heavily on Plaintiff's subjective complaints and were inconsistent with the record as a whole because there was "no longitudinal history of mental health issues except for one brief period prior to [Plaintiff's] most recent, inconsistent treatment." (Id.) The ALJ specifically noted the record contained little, if any, support for "most" of Dr. Eaton's diagnoses of anxiety disorder, depression, amnestic disorder, intermittent explosive disorder, and personality disorder. (Id.) The ALJ observed Plaintiff had never been fired due to an inability to get along with others, and she had no reports of problems with authority or getting along with family, friends, or neighbors. ALJ Fishman stated, "At most, [Dr. Eaton's] impressions are based on a snapshot presentation." (Id.)

In addition, ALJ Fishman gave "[c]areful consideration" to the State Agency mental health evaluators' opinions, but he did not give these opinions much weight, if any. (Id.) ALJ Fishman noted these opinions relied too heavily on Dr. Shivers' and Dr. Eaton's opinions, which he "discounted previously." (Id.)

ALJ Fishman clearly stated his reasons for giving the opinions of Drs. Shivers, Eaton, Suansilppongse, Keyes, and Garmon little to no weight. Specifically, the ALJ stated Dr. Shivers did not see Plaintiff frequently, and his assessment was largely based on Plaintiff's subjective reports. In addition, the ALJ determined the objective evidence of record did not support Dr. Shivers' findings. Thus, the ALJ had "good cause" to give little weight to the opinion of Plaintiff's treating physician.

Further, ALJ Fishman stated he did not find Dr. Eaton's opinions and diagnoses to be supported by objective evidence of record and that they relied too heavily on Plaintiff's subjective reports. ALJ Fishman discounted the opinions of Drs. Suansilppongse, Keyes, and

Garmon because their opinions relied on the opinions of Drs. Shivers and Eaton, and he had already discounted those opinions. The ALJ met the requirements of 20 C.F.R. §§ 404.1527(c) & 416.927(c) by stating his reasons for discounting these doctors' opinions.

As ALJ Fishman met the legal requirements for weighing the opinions of Plaintiff's medical sources, his determination to give little to no weight to these opinions is supported by substantial evidence. This enumeration of error is without merit.

**IV.     Listing 12.04**

Plaintiff maintains ALJ Fishman failed to cite any medical evidence regarding her mental state which contradicted the findings of her physicians. Rather, Plaintiff avers, it appears the ALJ did not credit these opinions "based on his own diagnostic impressions." (Doc. 14, p. 18.) Plaintiff asserts the ALJ failed to consider the clinical signs of her chronic mental disorders or the medications she took for these disorders. Plaintiff contends a mental health professional's observations of a patient's behavior and responses during a mental health status examination are clinical signs of mental illness and thus, her physicians' opinions in this regard are based on clinical signs.

The Commissioner responds that, given that substantial evidence supports the ALJ's decision to give Plaintiff's physicians' opinions little weight, her argument that she meets Listing 12.04C necessarily fails. The Commissioner asserts the ALJ considered Listing 12.04 and explained why Plaintiff did not meet this Listing's "B" criteria, as he found Plaintiff had no restriction in her activities of daily living, moderate difficulties in maintaining social functions and in concentration, persistence, or pace, and no episodes of decompensation of an extended duration. The Commissioner also asserts Plaintiff fails to present any argument regarding how her impairments met or equaled the "A" criteria of Listing 12.04.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. Sullivan, 493 U.S. at 530. A claimant whose severe impairment satisfies or medically equals a listed impairment is "conclusively presumed to be disabled based on his or her medical condition." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). If a claimant cannot prove that she is disabled at step three, she may do so at steps four and five. See Phillips v. Barnhart, 357 F.3d 1232, 1238–40 (11th Cir. 2004).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (internal citation omitted).

Listing 12.04 addresses affective disorders and provides that such a disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. 404, Subpart P, Appendix 1, § 12.04. To meet

Listing 12.04, a claimant must have "[m]edically documented persistence, either continuous or intermittent, of" depressive syndrome, manic syndrome, or bipolar syndrome and this condition results in at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[3] Id. at §§ 12.04A, B. In the alternative to the "B" criteria, a claimant may, in addition to the "A" criteria, show a: "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:" repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Id. at § 12.04C.

ALJ Fishman determined the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04. (Doc. 12-2, p. 14.) Specifically, the ALJ noted Plaintiff had no restriction in her activities of daily living, as there was no objective evidence that Plaintiff had any limitations due to a mental impairment. ALJ Fishman also noted Plaintiff had moderate difficulties in social functioning based on a function report which indicated she had never been fired from a job because she had problems getting along with others, and she had no

---

[3] "The term 'marked' means more than moderate but less than extreme and covers a limitation that interferes 'seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis.'" Simms v. Colvin, No. CV 114-212, 2015 WL 6509128, at *4 (S.D. Ga. Oct. 28, 2015) (internal citation omitted), *report and recommendation adopted* (S.D. Ga. Nov. 19, 2015).

11

problems with authority or getting along with family, friends, or neighbors. The ALJ likewise observed there was no indication of the record, other than her own subjective complaints, that Plaintiff experienced more than moderate difficulties in this domain. As for the area of concentration, persistence, or pace, the ALJ determined Plaintiff had moderate difficulties, as the record lacked any objective indication that Plaintiff was more limited in this area. Finally, ALJ Fishman noted there was no objective evidence that Plaintiff had any episodes of decompensation of an extended duration. (Id.)

Because the ALJ determined Plaintiff's mental impairment did not cause at least two marked limitations (or one marked limitation with repeated episodes of decompensation of extended duration), the "paragraph B" criteria were not met. ALJ Fishman also found the "paragraph C" criteria were not met. In so doing, the ALJ stated Plaintiff did not have a medically documented history of chronic affective disorder of at least two years' duration which caused more than a minimal limitation on her ability to perform basic work. (Id.) ALJ Fishman also determined Plaintiff's "symptoms or signs [were] currently attenuated by medication or psychosocial support[.]" (Id.)[4]

ALJ Fishman specifically examined whether Plaintiff met Listing 12.04 by considering both the "B" and "C" paragraphs. Substantial evidence supports ALJ Fishman's determination that Plaintiff met neither of these sets of criteria. Plaintiff failed to meet her burden of

---

[4] ALJ Fishman's entire statement in this regard is as follows: "In addition, with symptoms or signs currently attenuated by medication or psychosocial support, and either: (1) repeated episodes or decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (Doc. 12-2, p. 14.) Given the ALJ's finding that Plaintiff did not meet the "C" criteria, the Court presumes the ALJ meant to state Plaintiff's alleged debilitating condition was weakened due to her medication and/or support, and that she did not exhibit any of the three criteria.

establishing she met all of the criteria of Listing 12.04, and her contention to the contrary is without merit.

**V.      Hypothetical Posed to Vocational Expert**

Plaintiff alleges it is "far from apparent" that the ALJ's residual functional capacity assessment and hypothetical posed to the vocational expert account for the "acknowledged" limitations in the areas of functioning and of concentration, persistence, or pace. (Doc. 14, p. 20.) According to Plaintiff, these deficiencies "deprive the ALJ's decision of substantial support even when viewed in the context of the ALJ's own findings." (Id. at p. 21.)

The Commissioner states that, contrary to Plaintiff's contention, the ALJ's residual functional capacity and the hypothetical posed to the vocational expert adequately accounted for Plaintiff's moderate limitation in concentration by restricting her to repetitive, short cycle work with a Specific Vocational Preparation code between 1 and 3, which corresponds with the definition of unskilled work and at the low end of semi-skilled work. The Commissioner states the medical records and other evidence support the ALJ's residual functional capacity finding, which implicitly accounts for his psychiatric review technique ratings of moderate difficulties in concentration and moderate difficulties in maintaining social functioning. Thus, the Commissioner asserts, the vocational expert's testimony provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work existing in the national economy.

A residual functioning capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880,

885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

Under the Act, a plaintiff bears the burden of proving that she cannot perform her past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). If a plaintiff cannot perform her past relevant work, the burden shifts to the ALJ to prove that other work exists in the national economy which the plaintiff can perform. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, at *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

Here, in addition to the findings as to the Plaintiff's medical source opinions set forth above, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not to be credible. The ALJ noted Plaintiff testified she was fired from her job of two and a half years at Walmart because she missed too much time due to sickness, yet she told a consultative examiner she was fired because she was accused of allowing a customer to steal something. (Doc. 12-2, pp. 15–16, 33; Doc. 12-7, p. 103.) ALJ Fishman observed a reasonable inference from these inconsistent statements is that Plaintiff's alleged impairments did not prevent the performance of her job, since that job was being "performed adequately at the time of the layoff despite a similar medical condition." (Doc. 12-2, p. 16.) ALJ Fishman also

observed that Plaintiff testified that, after she was terminated from Walmart, she looked for another job but could not find one, indicating that Plaintiff felt she was able to work.

In addition, ALJ Fishman stated Plaintiff began going to Gateway for treatment in June 2011, which was after she filed for benefits. The ALJ stated Plaintiff's only mental health records prior to June 2011 were from approximately five years prior, after the deaths of her sister and boyfriend. The ALJ noted Plaintiff used medication for a brief period, which did not suggest the presence of a mental impairment more limiting than what he determined. (Doc. 12-7, p. 96.) Moreover, ALJ Fishman opined Plaintiff's infrequent trips to the doctor for her mental health symptoms "suggest that the symptoms were not quite as severe as" alleged. (Doc. No. 12-2, p. 16.) Further, ALJ Fishman observed "the fact that [Plaintiff] only went back to seek mental health treatment after filing for benefits suggests there may have been ulterior motives for seeking treatment." (Id.) Additionally, ALJ Fishman stated Plaintiff only attended mental health treatment sporadically after June 2011 and returned after a nine month hiatus in November 2012 to have a medical assessment completed. The ALJ also stated Plaintiff told Dr. Shivers at that time her condition had worsened, "despite rather minimal complaints during her most recent appointments." (Id.)

ALJ Fishman noted Plaintiff denied any use of drugs at the hearing, (doc. 12-2, p. 32), yet she previously indicated she had used cocaine in the past and had her son taken away from her as a result. (Doc. 12-7, p. 96.) ALJ Fishman noted Plaintiff never mentioned any mental health complaints during her emergency room visits for breathing treatments. (See, e.g., Doc. 12-9, pp. 5, 10.) In fact, ALJ Fishman noted Plaintiff's mental health status was evaluated

on one of these occasions, and Plaintiff did not indicate she was experiencing depression and presented as calm and cooperative. (Doc. 12-2, p. 16; Doc. 12-9, p. 49.)[5]

At the hearing, ALJ Fishman asked the vocational expert to assume that an individual with past relevant work experience at the sedentary to light, semi-skilled level who was fifty years old with an eleventh grade education, who could lift at least twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for eight hours a day; avoid climbing ladders, ropes, and scaffolding but could occasionally climb stairs and crawl; frequently stoop, crouch, and kneel; and would have to avoid frequent concentrated exposure to dust, fumes, other airborne particulates, and temperature extremes. The ALJ also asked the vocational expert to consider that the individual would be able to perform repetitive short cycle work, usually at the Specific Vocational Preparation codes of 1 and 2. (Doc. 12-2, pp. 65–66.) The vocational expert stated the hypothetical individual could work as a bench assembler, cleaner/housekeeper, and officer helper. All of these jobs were at the light, unskilled level with a Specific Vocational Preparation code of 2. (Id. at p. 66.)

The ALJ included all of the impairments he accepted as true in the hypothetical posed to the vocational expert. As that was all that was required of him, this enumeration of error is without merit.[6]

---

[5] Though Plaintiff did not challenge the ALJ's credibility determination, the Court includes discussion of this determination as a possible explanation of why Plaintiff's subjective reports were not included in ALJ Fishman's residual functioning capacity finding and thus, his hypotheticals posed to the vocational expert.

[6] While ALJ Fishman's decision is not as lengthy as most of the administrative decisions this Court reviews, this does not mean his decision is not supported by substantial evidence, as indicated in the body of this Report.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Court **AFFIRM** the decision of the Commissioner and **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 14th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA